## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | ) | |
| BRANDYWINE HOSPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-1458-MRP |
| | ) | **ORAL ARGUMENT** |
| CVS HEALTH CORPORATION, CVS | ) | **REQUESTED** |
| PHARMACY, INC., CAREMARK, L.L.C., | ) | |
| and WELLPARTNER, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................1

I.    Plaintiff Fails To Allege a Claim for Unlawful Tying.........................................................1

    A.    Under Any Theory, Plaintiff Must Allege a Valid Tying Product Market.............1

    B.    Plaintiff Fails To Allege a Proper Tying Product Market.......................................2

    C.    The Complaint Fails To Allege a Proper Relevant Geographic Market..................7

    D.    The Complaint Alleges No Market-Wide Anticompetitive Effects in the Tied Product Market .........................................................................................9

II.    The Claims Against CVS Health Should Be Dismissed....................................................11

    A.    The Court Lacks Personal Jurisdiction over CVS Health.....................................12

    B.    The Complaint Fails To State a Claim Against CVS Health.................................14

CONCLUSION....................................................................................................................15

## **TABLE OF AUTHORITIES**

### **CASES**

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998) .................... 9, 10

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ............................................................. 3

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 696 F. Supp. 97 (D. Del. 1988) ........................................................................................................................................ 4

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ..................................... 15

*Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415 (E.D. Pa. 2005) ...................................................................................................................................... 13, 14

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) ................................... 12, 14

*Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399 (3d Cir. 2016) ..................... 11

*Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992) ............................. 4

*Eichorn v. AT & T Corp.*, 248 F.3d 131 (3d Cir. 2001) ......................................................... 9, 11

*FTC v. Advoc. Health Care Network*, 841 F.3d 460 (7th Cir. 2016) .......................................... 9

*FTC v. OSF Healthcare Sys.*, 852 F. Supp. 2d 1069 (N.D. Ill. 2012) ........................................ 9

*FTC v. Penn State Hershey Medical Center*, 838 F.3d 327 (3d Cir. 2016) ................................. 9

*FTC v. Thomas Jefferson University*, 505 F. Supp. 3d 522 (E.D. Pa. 2020) ............................... 9

*Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971 (7th Cir. 1999) ............................................... 4

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .................... 12

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374 (3d Cir. 2005) ................................... 11

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324 (D. Del. 2007) .................................................................................................................................... 13

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ...................................................... 1

*In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004) .................... 12, 13, 14

*In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172 (N.D. Ala. 2014) ................ 14

*In re Cox Enters., Inc.*, 871 F.3d 1093 (10th Cir. 2017) ........................................................... 10

*In re McCormick & Co.*, 217 F. Supp. 3d 124 (D.D.C. 2016)........................................................11

*In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403 (S.D.N.Y. 2005)........................10

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010)................................................3

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) .................................................10, 11

*Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137 (3d Cir. 2021)...........................................2

*Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, 2015 WL 1346240 (D.N.J. Mar. 25, 2015)........................................................................................................................6

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013).........................12, 13

*Park v. Temple Univ.*, 757 F. App'x 102 (3d Cir. 2018) ...............................................................15

*Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.*, 2008 WL 5190049 (S.D. Ohio Dec. 9, 2008)........................................................................................................................14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) ......................2, 3, 5

*Radio Music License Comm., Inc. v. Glob. Music Rts., LLC*, 2017 WL 8682117 (E.D. Pa. Nov. 29, 2017)....................................................................................................................13

*Rankin v. DeSarno*, 89 F.3d 1123 (3d Cir. 1996) ..........................................................................7

*Sentry Data Sys. v. CVS Health*, 379 F. Supp. 3d 1320 (S.D. Fla. 2019)..................................4, 8

*Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246 (E.D. Pa. 2020).........................................7

*Synthes, Inc. v. Emerge Medical, Inc.*, 2012 WL 4473228 (E.D. Pa. Sept. 28, 2012) ...............8, 9

*United States v. Esquivel*, 88 F.3d 722 (9th Cir. 1996) ................................................................6

*Venzie Corp. v. United States Mineral Prods. Co.*, 521 F.2d 1309 (3d Cir. 1975) .....................10

## STATUTES AND RULES

15 U.S.C. § 22..................................................................................................12, 13, 14, 15

28 U.S.C. § 1391................................................................................................................13

## OTHER AUTHORITIES

Areeda & Hovenkamp, *Antitrust Law* (4th ed. 2018)............................................................10, 11

Katheryne Richardson, *The Bridge to 340B Comprehensive Pharmacy Services Solutions in Underserved Populations*, available at https://web.archive.org/web/20121007120951/http:/www.hrsa.gov/opa/files/bridgeto340b.pdf ...................................................................................................................5

## INTRODUCTION

Plaintiff does not dispute that this lawsuit is nearly identical to the case recently dismissed at the pleading stage by the New York Supreme Court or that the key portions of this Complaint were cut-and-pasted from the New York complaint. Nor does Plaintiff try to distinguish that case from this one. Instead, the Opposition (ECF No. 24) simply ignores it, never once addressing the Supreme Court's decision, which was discussed extensively in, and attached to, Defendants' Motion (ECF Nos. 20-1, 20-3). Plaintiff's tactic is understandable: It has no response to the Supreme Court's well-reasoned opinion that equally disposes of these copycat claims.

Plaintiff fails to rebut the central issue raised by Defendants: Plaintiff's gerrymandered market definition, limited to CVS pharmacy locations, leaves out obvious substitutes and cannot be reconciled with commercial realities. Nor does Plaintiff address the obvious disconnect between its "nationwide" geographic market and its other allegations, or its failure to allege market-wide anticompetitive harm in the tied product market (which applies notwithstanding Plaintiff's attempt to characterize its cause of action as a "rule of reason" claim). Finally, Plaintiff misreads Circuit precedent when it argues the Court has personal jurisdiction over Defendant CVS Health Corporation ("CVS Health"), and it cannot point to a single allegation that asserts CVS Health took any action whatsoever. This Court should dismiss the Complaint, just as the New York Supreme Court did with the predecessor to this copycat lawsuit.

## ARGUMENT

## I.   Plaintiff Fails To Allege a Claim for Unlawful Tying

### A.   Under Any Theory, Plaintiff Must Allege a Valid Tying Product Market

The U.S. Supreme Court has been clear that "in **all cases** involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Ill. Tool Works*

*Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006).[1]  The "concern over tying arrangements is limited to those situations in which the seller can exploit its power in the market for the tying product to force buyers to purchase the tied product when they otherwise would not, thereby restraining competition in the tied product market." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 442-43 (3d Cir. 1997) (citation omitted).  Therefore, to survive a motion to dismiss under either a *per se* or rule of reason theory, Plaintiff must plausibly allege a relevant tying product market.

Plaintiff fails to acknowledge this requirement for its rule of reason theory, *see* Opp. 8, and incorrectly claims that CVS's only attack on the rule of reason claim "is their contention that Plaintiff has not pleaded anticompetitive effects in the tied product market." Opp. 17.  But Defendants were clear—and case law provides—this requirement to plead a plausible tying product market applies to the rule of reason too.  Mot. 9.  Plaintiff cites no case to the contrary; the only tying case it cites for the rule of reason standard dismissed the case for failure to plead separate tying and tied markets.  *Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137, 145 (3d Cir. 2021).

### B.    Plaintiff Fails To Allege a Proper Tying Product Market

Plaintiff does not contest its claim must be dismissed if its proposed tying product market "clearly does not encompass all interchangeable substitute products." *Queen City Pizza*, 124 F.3d at 436.  Nor does Plaintiff dispute that single-brand markets are regularly dismissed at the pleading stage.  *See* Mot. 12 (collecting cases).  And Plaintiff does not even acknowledge, much less refute, the New York Supreme Court's decision holding that a CVS-only market is "impermissibly narrow" and "cannot be reconciled with the commercial realities."  ECF No. 20-3 at 59-60.

The most Plaintiff can say is that a single-brand product "***can*** . . . be a relevant market" for "a ***unique*** and ***non-interchangeable*** derivative product or service."  Opp. 10 (citations omitted).

---

[1] All emphases herein are supplied unless otherwise noted.

But to survive a motion to dismiss on such a theory, Plaintiff must do more than allege in conclusory terms that the product is "unique" or "non-interchangeable;" it must also allege "practical indicia" of a separate product market, such as "industry or public recognition of the [product] as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1337-38 (11th Cir. 2010) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)).  Plaintiff fails to allege any of this.[2]

As Defendants' motion demonstrates, Mot. 10-12, and the New York Supreme Court held, CVS's 340B services are not unique, and there are numerous interchangeable providers outside Plaintiff's alleged "CVS Contract Pharmacy Market"—namely the thousands of other contract pharmacies with which Covered Entities can and do contract for the exact same services, ECF No. 20-3 at 52 (explaining the "most natural product market definition" is "***all*** pharmacies capable of serving as contract pharmacies to covered entities").  As in that case, Plaintiff here "give[s] no . . . plausible reasons why CVS contract pharmacies are . . . situated differently than the myriad of other pharmacies in the same region, that offer the same 340B contract pharmacy services to Covered Entities." *Id.* at 57.  Indeed, Plaintiff's Opposition acknowledges that covered entities apply the same criteria in deciding whether to contract with CVS or Walgreens.  *See* Opp. 9-10.  That dooms Plaintiff's case.  As Plaintiff states, interchangeability "means one product is ***roughly*** equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively."  Opp. 9 (citation omitted).

Plaintiff acknowledges a CVS-only market would not be a proper relevant market for

---

[2] Similarly, simply asserting that "cross-elasticity of demand is zero," Opp. 10, cannot overcome a plaintiff's failure to include obvious substitutes in its market definition, *see Queen City Pizza*, 124 F.3d at 436, 439-40.

"consumers choosing between two pharmacies." Opp. 11. But Plaintiff attempts to distinguish its CVS-only "contract pharmacy" market from other failed single brand markets by arguing that, from the Covered Entities' perspective, "340B Savings at CVS Contract Pharmacies are additive to any 340B Savings at other Contract Pharmacies" and therefore "they cannot be switched," because Covered Entities supposedly have "no ability to influence consumers' choice" regarding at which pharmacy they fill a prescription. *Id.* at 9-11.

That argument fails for multiple reasons. ***First***, this dynamic is true in many secondary markets that depend on consumers choosing among competing brands. *See* Mot. 14 (citing *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 696 F. Supp. 97, 131 (D. Del. 1988)). Yet Plaintiff cites no case for its theory that "additive" revenue streams from different sellers make single brand markets for each of those sellers appropriate. The Opposition cites just one case accepting a single brand market, *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992)). But *Kodak* addressed a market with high barriers to entry where customers were locked into purchasing unique aftermarket products after purchasing the initial (expensive, durable) product. That is nothing like the facts here. *See Sentry Data Sys. v. CVS Health*, 379 F. Supp. 3d 1320, 1331 (S.D. Fla. 2019) (cited at Opp. 14) (finding no "plausible barriers to entry given that five other pharmacy chains, along with CVS, dominate a total of two-thirds of the relevant market nationally"). And Plaintiff goes even further than defining a single brand market, arguing that ***every 340B pharmacy is a monopolist in its own market***. *See* Mot. 14-15. Plaintiff offers no response to this point and cites no case approving such a theory. *Cf. Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir. 1999) ("Not even the most zealous antitrust hawk has ever argued that Amoco gasoline, Mobil gasoline, and Shell gasoline are three separate product markets.").

***Second***, Plaintiff's premise, based on so-called "steering" guidance, is not supported by

that guidance.  Plaintiff's Opposition never explains how the HRSA guidance it cites prevents Covered Entities from informing their patients about 340B Savings, which pharmacies they have contracted with, or how filling their prescriptions at a particular Contract Pharmacy can help the Covered Entities.  Opp. 12.  Plaintiff instead suggests that "Defendants have simply made up an ability to steer patients by improperly citing a document outside the Complaint."  Opp. 12.[3]  This has it backwards:  It was Plaintiff that relied on purported "HRSA requirements" to support its implausible market definition.  Compl. ¶¶ 45-46.  It is thus entirely appropriate for this Court to interpret the requirements Plaintiff relies upon.  As the New York Supreme Court said in rejecting the same flawed interpretation of these regulations, "this is plain language.  It's not a matter for discovery."  ECF No. 20-3 at 59.  And the guidance plainly does not "prevent covered entities" from "informing their patients about which pharmacies will provide 340B benefits."  *Id.*

Plaintiff also takes issue with Defendants citing judicially noticeable government data in their motion.  Opp. 6-7.  As Defendants explained in their Motion, the Complaint must be dismissed because Plaintiff's market definition excludes obvious or clear "substitutes," *Queen City Pizza*, 124 F.3d at 436—a conclusion that requires no data to reach.  The cited HRSA data, however, confirm the obvious:  CVS competes with other 340B pharmacies.  Those data show that when the challenged conduct went into effect, CVS accounted for just 6 percent of contract-pharmacy/covered-entity arrangements in the United States (while Walgreens accounted for 45 percent).  Mot. 11.  And they show Plaintiff itself did not view CVS as a "must have" 340B pharmacy,

---

[3] Plaintiff wrongly states, Opp. 12, that the HRSA-supported manual for covered entities only addresses marketing for *in house* pharmacies.  The manual has a section titled "Market the **contracted pharmacy service**" in which it instructs Covered Entities that "[i]t is critical to establish a plan for marketing the service to patients" including "***to inform patients that the contracted pharmacy will provide the service***."  Katheryne Richardson, *The Bridge to 340B Comprehensive Pharmacy Services Solutions in Underserved Populations*, at 98, available at https://web.archive.org/web/20121007120951/http:/www.hrsa.gov/opa/files/bridgeto340b.pdf.

since Brandywine did not contract with CVS for years.  Mot. 5.  Together, as the New York Su-

preme Court decided, these data confirm that "CVS did not have the power to coerce covered

entities to use Wellpartner's administrative services as required for a tying claim, as any covered

entity that wished not to use Wellpartner" could join Plaintiff (until 2021) and so many others "that

chose not to include CVS and their contract pharmacy network at all."  ECF No. 20-3 at 58.

Plaintiff admits these data "contradict Plaintiff's factual allegations."  Opp. 6.  But rather

than correct its falsehoods, Plaintiff asks the Court to turn a blind eye to judicially noticeable gov-

ernment records.  Plaintiff does not even try to explain how it could, consistent with Rule 11, state

that it contracted with CVS for 340B savings "between 2016 and 2022" (Compl. ¶ 26) when the

public records show that to be false—Plaintiff did not contract with CVS until 2021, just months

before it closed in 2022.  ECF No. 20-4.[4]  The reason Plaintiff does not want the Court to consider

judicially noticeable facts is obvious:  As Plaintiff acknowledges, the "crux of this case" is that

"Plaintiff had no practical choice but to contract with CVS" and therefore was "force[d]" to con-

tract with Wellpartner as well.  Opp. 1.  That Plaintiff chose not to contract with CVS for years

after the launch of the CVS/Wellpartner integrated offering puts the lie to that claim.

The Court is not limited to judicially noticing information from government agencies "only

for its existence and not for its truth."  Opp. 7 (cleaned up).  Ample caselaw shows that government

data is judicially noticeable for its truth.  *See, e.g.*, *Kiss Elec., LLC v. Waterworld Fiberglass Pools,*

*N.E., Inc.*, 2015 WL 1346240, at *10 (D.N.J. Mar. 25, 2015) (taking judicial notice of prime rate

---

[4] Plaintiff's objection to looking to the HRSA data is especially unsupported given that the Com-
plaint makes clear Plaintiff relied on the same data in filing this case.  *See* Compl. ¶ 118; *see also*
*United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir. 1996) (rejecting defendant's challenge to
judicial notice where "the Government's evidence is of the same type and taken from the same
source—the United States Department of Commerce, Bureau of the Census—as her own").  Of
course, Plaintiff need not look at the HRSA data to know that its assertion that it contracted with
CVS in 2016 is false—it can look at its own records.

from Federal Reserve website (citing *Rankin v. DeSarno*, 89 F.3d 1123, 1134 n.11 (3d Cir. 1996)).[5]

Because Plaintiff has not defined a valid tying product market, its case must be dismissed.

### C.    The Complaint Fails To Allege a Proper Relevant Geographic Market

The Complaint also must be dismissed for the independent reason that its "nationwide" geographic market cannot be squared with the caselaw or its own allegations.  Mot. 16-17.  Plaintiff acknowledges it must define a geographic market based on where "a potential buyer may rationally look for the . . . services."  Opp. 15.  But Plaintiff fails to explain why a Covered Entity in Pennsylvania would "rationally look" for contract pharmacies *in Hawaii*, especially given Plaintiff's own allegations that Covered Entities "typically contract with a network of pharmacies . . . frequented by their patient population," Compl. ¶ 7, and "patients choose where to fill their prescriptions based on other factors that matter to them, such as location and convenience."  Compl. ¶ 94.

Plaintiff argues in opposition that its alleged geographic market meets the "hypothetical monopolist" test, because there is "no substitute to obtain those 340B Savings" from a CVS pharmacy location "by switching to *any other location* in the United States."  Opp. 15.  But that proves Defendants' argument.  If a pharmacy location in Hawaii is *not a substitute* for a pharmacy location that Brandywine contracts with in Pennsylvania, then the pharmacy in Hawaii is *not in the geographic market*.  Plaintiff's own argument supports a local, not nationwide, market.

Plaintiff blames Defendants for not addressing the specialty pharmacy market, but fails to cite any allegations in its Complaint.  Opp. 16.  The only potentially on-point statement in the Complaint is a stray allegation that "CVS Specialty is a mail-order pharmacy that operates throughout the United States."  Compl. ¶ 52.  But that allegation is limited to where CVS specialty

---

[5] *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020), on which Plaintiff relies, declined to notice the truth of facts within government reports in the context of that case, but does not suggest that courts may *never* judicially notice the truth of governmental data sets.

pharmacies operate and says nothing about whether covered entities rationally look to contract with CVS Specialty pharmacies locally, by region, or otherwise.  Plaintiff itself contracted with CVS pharmacies only locally and ***never*** with any CVS specialty pharmacy.  ECF No. 20-4.

Plaintiff's reliance on *Sentry* is misplaced for multiple reasons.  First, the plaintiff there did not improperly limit the product market to only CVS pharmacies, but instead was focused on the "***340B contract pharmacy services markets***."  379 F. Supp. 3d at 1330.  Indeed, one of the factors the *Sentry* court found persuasive in accepting a national market was that CVS "competes with other national pharmacy chains."  *Id.* at 1328.  Here, Plaintiff expressly alleges the opposite— under Plaintiff's market allegations, not only does a CVS pharmacy in Pennsylvania not compete with other national brands, it does not compete with "any other location in the United States." Opp. 15.[6]  Second, and critically, the *Sentry* decision ***dismissed*** Sentry's national claim because it could not "plausibly allege that CVS possesses the requisite market power in a national market." 379 F. Supp. 3d at 1332.  The court noted that Walgreens "is the single largest contract pharmacy" and that the complaint contained allegations regarding only six percent of covered entities nationally.  *Id.* at 1331 (noting *Jefferson Parish* found "30% market share to be insufficient").  Plaintiff fails to acknowledge this holding, which undermines the implausible market definition it alleges.

Plaintiff's other cases also support dismissal.  For instance, Plaintiff relies heavily (Opp. 15-16) on Judge Buckwalter's decision in *Synthes, Inc. v. Emerge Medical, Inc.*, 2012 WL 4473228 (E.D. Pa. Sept. 28, 2012).  But that case ***rejected*** a national geographic market based on allegations, like those here, that the defendant corporation did business nationwide.  *Id.* at *7. Judge Buckwalter found "such allegations would be insufficient," because "the relevant

---

[6] Notably, in *Sentry*, the plaintiff's first complaint was dismissed based on its improper geographic market.  379 F. Supp. 3d at 1326.  The plaintiff then amended its complaint, and substantially narrowed its local market definition to focus on 22 local "markets."  *Id.* at 1332.

geographic market is not defined by the market in which the defendant conducts its business" but rather "where customers . . . rationally look for the goods or services." *Id.* Similarly, *FTC v. Thomas Jefferson University*, (Opp. 15) **rejected** the plaintiff's geographic market for failing to "correspond with commercial realities." 505 F. Supp. 3d 522, 543 (E.D. Pa. 2020).

Plaintiff also cites *FTC v. Penn State Hershey Medical Center*, 838 F.3d 327 (3d Cir. 2016), to assert that "the relevant 'consumers' in this type of healthcare setting are Covered Entities, not patients." Opp. 15. What Plaintiff fails to mention is that the geographic market at issue in that case was **local** (the "four-county Harrisburg area") due to the local nature of healthcare. 838 F.3d at 346. This is consistent with numerous cases involving hospitals, such as those that participate in 340B, where the market was defined locally. *See, e.g.*, *FTC v. Advoc. Health Care Network*, 841 F.3d 460, 474 (7th Cir. 2016) ("Ninety-five percent of those patients drive 30 miles or less . . . to reach a hospital."); *FTC v. OSF Healthcare Sys.*, 852 F. Supp. 2d 1069, 1077 (N.D. Ill. 2012) ("[T]he area encompassing a 30-minute drive-time radius from [the hospital] is an appropriate geographic market to use in this case."). Given Plaintiff's allegation that Covered Entities contract with pharmacies "that are frequented by their patient population," Compl. ¶ 7, it would be incongruous for the market for hospitals to be inherently local, and yet the market for contract pharmacies to be national. Plaintiff has provided no allegations that explain that incongruity.

### D.   The Complaint Alleges No Market-Wide Anticompetitive Effects in the Tied Product Market

The Sherman Act "only" prohibits "activities that have anti-competitive effects **on the market as a whole**." *Eichorn v. AT & T Corp.*, 248 F.3d 131, 148 (3d Cir. 2001). So to state a viable tying claim, a plaintiff must allege "competitive harm to the tied market as a whole." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 519 (3d Cir. 1998). Put another way, "[f]or a tie to create an anticompetitive effect there must be 'a substantial threat that the tying seller

will acquire market power in the tied product market.'" *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 424 (S.D.N.Y. 2005) (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 38 (1984) (O'Connor, J., concurring)).  But, as Defendants have explained, *see* Mot. 17-20, because of Plaintiff's mismatched market definitions, it has not alleged that such a threat exists to the alleged tied product market here ("TPA services").  Rather, Plaintiff's assertions of anti-competitive harm are limited to a small subset of that market—"TPA services to Covered Entities *using CVS*."  Compl. ¶ 105; *see also* Compl. ¶ 113 (antitrust injury allegations limited to "provision of TPA services *at CVS Contract Pharmacies*" and "Covered Entities contracting *with CVS Contract Pharmacies*").

Plaintiff acknowledges that the Complaint does not allege "the foreclosure of rivals in the tied market" as a whole or that there is a risk CVS will acquire "market power in the tied market." *See* Opp. 18.  Yet Plaintiff attempts to sidestep this requirement in two ways, neither of which is persuasive.  First, Plaintiff asserts that "the Court need not analyze any allegations relating to anticompetitive effects" because the Complaint includes "a per se claim."  Opp. 17 n.8.  But that "argument reflects an outdated view of the law."  *In re Cox Enters., Inc.*, 871 F.3d 1093, 1098 (10th Cir. 2017).[7]  As the Supreme Court has explained, "the per se rule against tying can be coherent only if tying is defined by reference to the economic effect of the arrangement." *Jefferson*

---

[7] Plaintiff points to dicta from the Third Circuit's decision in *Brokerage Concepts*.  *See* Opp. 17 n.8.  But the Third Circuit did not have reason to decide whether a *per se* claim could survive without pleading market-wide anticompetitive effects in that case since it decided that the *per se* claim failed for other reasons and that anticompetitive effects were not shown under the rule of reason.  *See Brokerage Concepts*, 140 F.3d at 512, 519-20.  As Areeda describes, while the Third Circuit has not had occasion to "explicitly demand[] an 'anticompetitive effect'" in *per se* claims, it has indicated that "the usual hostility [toward a tying arrangement] was not warranted when the type of case at hand differs significantly from the 'factual pattern' that 'the Supreme Court has declared illegal per se.'  The key element of that factual pattern is the potential foreclosure of a substantial share of the tied market."  Areeda & Hovenkamp, *Antitrust Law* ¶ 1722a (4th ed. 2018) (quoting *Venzie Corp. v. United States Mineral Prods. Co.*, 521 F.2d 1309, 1317 (3d Cir. 1975)).

*Parish*, 466 U.S. at 21 n.33.  After all, antitrust law is "primarily" concerned with tying in "the rare cases where power in the market for the tying product is used to create **additional** market power in the market for the **tied** product."  *Id.* at 36-37 (O'Connor, J., concurring) (emphasis in original).  Courts therefore hold that, even under the *per se* rule, a "tying claim must fail absent any proof of anti-competitive consequences in the market for the tied product."  Areeda & Hovenkamp, *Antitrust Law* ¶ 1722c (4th ed. 2018) (citation omitted) (collecting cases).

Second, Plaintiff argues that the Complaint adequately "pleaded anticompetitive effects" in the tied product market just by alleging that Defendants charged "supracompetitive prices" for TPA services.  Opp. 17-18.  Plaintiff's reliance on these conclusory allegations is misplaced.  For one, they do not show "anti-competitive effects **on the market as a whole**."  *Eichorn*, 248 F.3d at 148.  The Complaint's allegations of "supracompetitive" prices are cabined to a thin slice of the alleged tied product market.  *See, e.g.*, Compl. ¶ 113 (alleging "Covered Entities **contracting with CVS Contract Pharmacies** paid supracompetitive prices for TPA services").  There are zero allegations of supracompetitive prices in the broader TPA services market.  That is "fatal" to Plaintiff's claim.  *See Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399, 405 (3d Cir. 2016).  Moreover, "[c]onclusory allegations of supracompetitive prices are not sufficient" to survive a motion to dismiss.  *In re McCormick & Co.*, 217 F. Supp. 3d 124, 137 (D.D.C. 2016) (collecting cases).  After all, "a firm's comparatively high price may simply reflect a superior product."  *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005).  Plaintiff failed to plausibly allege market-wide anticompetitive effects, so its claims must be dismissed.

## II.     The Claims Against CVS Health Should Be Dismissed

Even if the Court were to allow Plaintiff's Complaint to go forward against certain entities, CVS Health should still be dismissed under both Rules 12(b)(2) and 12(b)(6).

A.      **The Court Lacks Personal Jurisdiction over CVS Health**

In its Opposition, Plaintiff relies exclusively on "the Clayton Act's nationwide service of process provision" to establish "personal jurisdiction over CVS Health." Opp. 23; *see* 15 U.S.C. § 22. But that provision only provides a basis for personal jurisdiction over CVS Health if the threshold venue requirement is satisfied. It is not. Therefore, the claims against CVS Health must be dismissed for lack of personal jurisdiction.[8]

Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process *in such cases* may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. CVS Health does not dispute that the second clause provides for a "nationwide . . . service of process on a defendant corporation in federal antitrust litigation." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 (3d Cir. 2004). But circuits are split over whether the phrase "in such cases" in that clause means a plaintiff seeking to invoke a nationwide contacts analysis "must follow the dictates of both of its clauses." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). The best reading of the statute (and the majority position) is that, "[t]o avail oneself of the privilege of nationwide service of process, a plaintiff must satisfy the venue provisions of Section 12's first clause." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013); *see Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005); *GTE New Media Servs.*, 199 F.3d at 1351.

Plaintiff suggests that the Third Circuit's decision in *Automotive Refinishing* is on the other

---

[8] Plaintiff suggests that CVS Health "waived" this argument by not "mov[ing] to transfer venue" or "invok[ing] Rule 12(b)(3)." Opp. 22. Not so. For one, Plaintiff also pleaded venue under 28 U.S.C. § 1391(b). Compl. ¶ 25. CVS Health's position has always been that meeting the threshold venue provisions ***under Section 12 of the Clayton Act*** is "a necessary prerequisite" to invoke Section 12's nationwide contacts analysis, as a majority of circuits have held. *See* Mot. 22 & n.14.

side of this split.  But Plaintiff misreads that decision's narrow holding.  *Automotive Refinishing* was explicit that it was only addressing this issue in the context of "antitrust litigation involving ***foreign nationals***."  358 F.3d at 290.  And the court's reasoning was based entirely on the defendant's foreign status.  The court noted the "crucial" distinction between alien and domestic corporations:  For "***domestic*** corporations," the general venue statute, 28 U.S.C. § 1391, is "***more*** difficult to satisfy than the Section 12 venue requirements."  *Id.* at 296 n.10 (cleaned up).  But in suits against foreign corporations, venue is generally proper "in any judicial district."  28 U.S.C. § 1391(c)(3); *see also Automotive Refinishing*, 358 F.3d at 296 (explaining that "[t]he principle that an alien may be sued in any district" is "deeply rooted" in our nation's history and "tradition") (citation omitted).  The Third Circuit balked at the prospect of "an alien defendant" using Section 12's "narrower venue provision" as a "shield against suit."  *See Automotive Refinishing*, 358 F.3d at 296 (citations omitted).  And it reasoned that a "special venue provision" like Section 12's "should not . . . be deemed exclusively controlling ***when the defendant involved is an alien***."  *Id.* (citation omitted).  So the court issued a narrow holding:  the "worldwide service of process authorized under Section 12 of the Clayton Act, 15 U.S.C. § 22, upon ***foreign corporations*** is independent of the specific venue provision contained in that statute," and "a federal court's personal jurisdiction over a ***foreign*** corporation in antitrust litigation may be predicated on the ***foreign*** corporation's contacts with the United States as a whole."  *Id.* at 290; *see also id.* at 298-99 (noting this was "consistent with" the rule for foreign defendants, Federal Rule of Civil Procedure 4(k)(2)).

Unsurprisingly, courts in this Circuit and elsewhere have recognized that *Automotive Refinishing*'s holding was limited to alien defendants.[9]  This Court should join the courts in this

---

[9] *E.g.*, *KM Enters.*, 725 F.3d at 727-28; *Radio Music License Comm., Inc. v. Glob. Music Rts., LLC*, 2017 WL 8682117, at *13 (E.D. Pa. Nov. 29, 2017); *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 337-38 (D. Del. 2007); *Cumberland*, 401 F. Supp. 2d at

Circuit that require antitrust plaintiffs to establish that "venue for domestic corporate [d]efendants" is proper under the Clayton Act "when personal jurisdiction is based solely on nationwide service of process." *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 424 (E.D. Pa. 2005). That approach "preserves the Third Circuit's alien-domestic distinction while reflecting a coherent interpretation of antitrust precedent." *Id.*

Plaintiff does not argue that it can meet the Clayton Act's venue provision, which requires a plaintiff to show that the defendant is "an inhabitant," is "found," or "transacts business" in the Eastern District of Pennsylvania. 15 U.S.C. § 22. "Being 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Automotive Refinishing*, 358 F.3d at 293 n.6 (citations omitted). But CVS Health is incorporated in Delaware, *see* Declaration of Thomas Moffatt ("Moffatt Decl.") ¶¶ 4-7, so it is not "an inhabitant" of Pennsylvania. And CVS Health cannot be "found" in Pennsylvania because it does no business there. *See id.* ¶¶ 4-5. Plaintiff cannot meet that threshold showing under Section 12, so it cannot invoke the Clayton Act "to establish personal jurisdiction." *Daniel*, 428 F.3d at 428.

### B.      The Complaint Fails To State a Claim Against CVS Health

Plaintiff admits "a corporate defendant may not be held liable merely by virtue of its corporate relationship with another defendant," and thus it must separately allege independent involvement of CVS Health apart from CVS Pharmacy, Wellpartner, and Caremark. Opp. 23. But the Complaint groups all four defendants into a single entity—"CVS"—without tying any conduct allegations to CVS Health. These "vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged . . . conduct cannot show the

---

423-24; *In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1195 n.23 (N.D. Ala. 2014); *Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co.*, 2008 WL 5190049, at *2 (S.D. Ohio Dec. 9, 2008).

necessary personal involvement or meet the notice pleading standards of Federal Rule of Civil Procedure 8(a)." *Park v. Temple Univ.*, 757 F. App'x 102, 109 (3d Cir. 2018) (cleaned up).[10]

Plaintiff tries to save its claim against CVS Health by pointing to three sets of allegations: (1) CVS Health's acquisition of Wellpartner, (2) discussions by "Executives at CVS Health," and (3) "CVS Health's control over the PBM business line." Opp. 24. None suffices. ***First*,** alleging that CVS Health acquired Wellpartner is simply restating that CVS Health is the parent company of Wellpartner, which Plaintiff acknowledges is not enough. Opp. 23. That this acquisition "enabled" (Opp. 24) CVS Pharmacy and Wellpartner to work together does not make CVS Health separately liable for either subsidiary's conduct. ***Second*,** the Opposition's reference to discussions of "Executives at CVS Health" is unsupported. Plaintiff cites paragraph 85 of the Complaint, but that paragraph's allegations are sourced to "CVS." Compl. ¶ 85 ("*CVS* internally recognized . . ."; "*CVS* planned . . ."; "*CVS* decided that . . ."). ***Third*,** just as CVS's corporate relationship with CVS Pharmacy and Wellpartner is not enough to state a claim, CVS Health's corporate relationship with an entity in "the PBM business line" (Opp. 24) cannot meet Plaintiff's burden. And, again, there are no allegations as to "CVS Health" in any of the paragraphs Plaintiff cites (Compl. ¶¶ 50-64). Nor could there be, if Plaintiff is to abide by Rule 11.

Because Plaintiff fails to separately allege any conduct of CVS Health in violation of the Sherman Act, its claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.[11]

---

[10] Plaintiff's citation (Opp. 23) to *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), is inapposite. *Copperweld* decided a parent company and its wholly-owned subsidiary were "incapable of conspiring with each other for purposes of § 1 of the Sherman Act." *Id.* at 777. It had nothing to do with the requirement to separately plead each defendant's conduct, and does not—as Plaintiff suggests—permit Plaintiff to group the CVS entities into "a single enterprise."

[11] Plaintiff has abandoned its Clayton Act claim and concedes it must be dismissed. Opp. 25 n.15.

Dated: June 23, 2023                          Respectfully Submitted,

*/s/ Craig D. Singer*
Enu A. Mainigi (*pro hac vice*)
Craig D. Singer
Jonathan B. Pitt (*pro hac vice*)
Katherine A. Trefz (*pro hac vice*)
Thomas W. Ryan (*pro hac vice*)
Noah C. McCullough[*] (*pro hac vice*)
Alexis C. Blackmore (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.,
Washington, DC 20024
Telephone: (202) 434-5000
emainigi@wc.com
csinger@wc.com
jpitt@wc.com
ktrefz@wc.com
tryan@wc.com
nmccullough@wc.com
ablackmore@wc.com

Mike Cowie (*pro hac vice forthcoming*)
**DECHERT LLP**
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 261-3339
mike.cowie@dechert.com

*Attorneys for Defendants*

---

[*] Practice is supervised by one or more D.C. Bar members; admitted to the Bar under D.C. App. R. 46-A (Emergency Examination Waiver).